FILED & JUDGMENT ENTERED
Steven T. Salata

Dec 12 2012

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

*Laura T Beyer*
Laura T. Beyer
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### Charlotte Division

| | |
|---|---|
| In re:<br><br>**Matthew Alan Jenkins,**<br>**d/b/a Shephard Service Company,**<br><br>        **Debtor.** | **Case No. 12-50413**<br><br>**Chapter 7** |
| **James T. Ward, Trustee,**<br><br>       **Plaintiff,**<br><br>**v.**<br><br>**Dianna Lee Jenkins,**<br><br>       **Defendant.** | **Adversary Proceeding 12-5033** |

## ORDER GRANTING (1) TRUSTEE'S MOTION FOR SUMMARY JUDGMENT AS TO CLAIMS BASED ON ACTUAL FRAUD; AND (2) TRUSTEE'S MOTION FOR <u>PARTIAL SUMMARY JUDGMENT AS TO CONSTRUCTIVE FRAUD</u>

This matter came on for hearing on November 28, 2012 on the *Trustee's Motion for Partial Summary Judgment* (the "Motion") filed on October 29, 2012, through counsel; the *Defendant's Opposition to Trustee's Motion for Partial Summary Judgment* (the "Objection") filed by Dianna Jenkins ("Defendant"); and the *Plaintiff's Reply to Defendant's Opposition to Trustee's Motion for Partial Summary Judgment* (the "Reply").  Present at the hearing were James T. Ward, Sr., the trustee for Matthew Alan Jenkins (the "Debtor") and the Plaintiff herein

(the "Trustee" or "Plaintiff"), who was represented at the hearing by A. Cotten Wright, and

Linda Simpson, the United States Bankruptcy Administrator for the Western District of North

Carolina.  Defendant did not attend the hearing or otherwise appear.

The Court has reviewed the pleadings, the exhibits thereto, the affidavits and

declarations, and other matters of record in this adversary proceeding and in the Debtor's

bankruptcy case.  Based on consideration of the same, as well as the parties' legal arguments and

the argument made at the hearing, the Court has determined that Plaintiff's Motion should be

allowed and hereby makes the following findings of fact and conclusions of law.

## I.     THE COURT'S JURISDICTION AND CONSTITUTIONAL AUTHORITY

In the Objection, Defendant argued that the Supreme Court's holding in *Stern v.*

*Marshall*, 564 U.S. ___, 131 S.Ct. 2594 (2011), limits this Court's jurisdiction.  However, the

holding in *Stern* was that "[t]he Bankruptcy Court . . . lacked the *constitutional authority* to enter

a final judgment on a state law counterclaim that is not resolved in the process of ruling on a

creditor's proof of claim."  *Stern v. Marshall*, 131 S. Ct. 2594, 2620, *reh'g denied*, 132 S. Ct. 56

(2011) (emphasis added).  *Stern* makes clear that 28 U.S.C. § 157(b) provides bankruptcy courts

with jurisdiction to enter final orders in "core proceedings."  *Id*. at 2603–04.  The list of core

proceedings in § 157(b)(2) includes "proceedings to determine, avoid or recover fraudulent

conveyances," precisely the types of claims at issue here.  § 157(b)(2)(H).

Bankruptcy courts have wrestled with whether the Supreme Court's ruling in *Stern*

should be narrowly applied as indicated in the *Stern* opinion, or whether *Stern* applies so as to

prevent bankruptcy courts from entering final orders with respect to claims to avoid fraudulent

conveyances and other core matters as set forth in § 157.  Neither the Fourth Circuit Court of

Appeals (the "Fourth Circuit") nor the United States District Court for the Western District of

North Carolina (the "District Court") has provided guidance on this point.  Other courts are split on this question.

The Court has researched the split of opinion as to whether the *Stern* decision prohibits this Court's entry of final orders on claims other than the narrow category of claims at issue in *Stern*.  The Court concludes that *Stern* should be narrowly interpreted as the text of the *Stern* decision indicates.  131 S. Ct. at 2620.  The Court does not believe that it is appropriate for bankruptcy courts to limit their congressionally determined jurisdiction as set forth in § 157 in reaction to a Supreme Court decision that states it "does not change all that much."  *Id*.  As explained in *In re Safety Harbor Resort and Spa*, 456 B.R. 703 (Bankr. M.D. Fla. 2011):

> years from now the Supreme Court may hold that section 157(b)(2)(F) dealing with fraudulent conveyances is unconstitutional, just as it did with section 157(b)(2)(C).  But the job of bankruptcy courts is to apply the law as it is written and interpreted today.  Bankruptcy courts should not invalidate a Congressional statute . . . or otherwise limit [their] authority to finally resolve other core proceedings [] simply because dicta in *Stern* suggests the Supreme Court may do the same down the road.

456 B.R. at 718.  The Court agrees with this analysis and holds that it has jurisdiction pursuant to 28 U.S.C. § 157(b)(2)(H) and (O), as well as the constitutional authority, to enter a final order with respect to the Motion.  Nevertheless, to the extent that the District Court determines that, this Court did not have the constitutional authority to enter a final order in this matter, this Order is to be construed as setting forth proposed findings of fact and conclusions of law.

## II.    FACTUAL BACKGROUND

On March 16, 2010, Federated Financial Corporation of America ("Federated") was awarded judgment against the Debtor (the "Federated Judgment").  The Debtor subsequently filed two unsuccessful appeals with respect to the Federated Judgment.  More than two years

later, on April 10, 2012, The Honorable Donald W. Stephens of the Wake County, North Carolina, Superior Court, entered an Order ("Judge Stephens' Order") in Case No. 09-CVS-002084 (the "Federated Matter").  Judge Stephens' Order included findings that the Debtor had received close to $400,000.00 in settlement proceeds from lawsuits (the "Lawsuit Proceeds") he had filed in North Carolina since 2008, which the Debtor appeared to deposit to Defendant's bank account.  The Debtor was ordered to appear before Judge Stephens on April 12, 2012 and to bring with him all bank records from Defendant's bank account or any other bank account that the Debtor had deposited funds into since January 1, 2008.

The next day, on April 11, 2012 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to chapter 7 of the Bankruptcy Code.  Federated was the only creditor listed on the Debtor's bare bones Petition.

On April 24, 2012, the Debtor filed his bankruptcy schedules and statement of financial affairs (the "Bankruptcy Papers") in the Bankruptcy Case.  The Debtor amended the Bankruptcy Papers several times, most recently on October 19, 2012.[1]  According to a September 14, 2012 amendment to the Bankruptcy Papers (the "September Amendment"), the Debtor collected $226,031.33[2] in Lawsuit Proceeds during the two years before the Petition Date.

Based on this Court's Orders, Defendant provided copies of bank statements (the "Bank Statements") on two bank accounts, a checking account at Branch Banking and Trust Company, account number xxxxxxxxx0440 (the "BB&T Account"), and another checking account at Wells Fargo Bank, formerly Wachovia Bank, account number xxxxxxxxx8590 (the "Wells Fargo Account," and together with the BB&T Account, the "Bank Accounts").  The Trustee also

---

[1]      The Bankruptcy Papers and the amendments thereto are referenced together herein as the "Amended Bankruptcy Papers."

[2]      Defendant's Bankruptcy Papers previously had stated that he had collected $235,278.00 in Lawsuit Proceeds.  Bankr. D.E. 33.

4

obtained documentation from the Debtor's pre-petition litigation attorney, W. Andrew LeLiever ("LeLiever"), including information as to various settlements of the Debtor's lawsuits, records regarding LeLiever's trust account, and copies of checks that LeLiever issued to Defendant with respect to the Debtor's Lawsuit Proceeds.   Likewise, the Trustee obtained trust account information from J. Blake Norman ("Norman"), another attorney who had represented the Debtor pre-petition, regarding the disposition of the Debtor's Lawsuit Proceeds.   The Debtor emailed a summary of the Lawsuit Proceeds to the Trustee's counsel on July 25, 2012 that indicated that the Debtor had collected $226,031.33 in Lawsuit Proceeds.

On May 14, 2012, the Debtor appeared and was sworn at the meeting of creditors in the Bankruptcy Case.   When questioned regarding the disposition of the Lawsuit Proceeds, the Debtor testified that checks for Lawsuit Proceeds were disbursed to Defendant and deposited to her bank account (the "Transfers").   The Debtor further testified that he was an authorized user of that account.

On July 19, 2012, the Debtor appeared for a continued meeting of creditors and testified that he had signed a signature card as an authorized user of the BB&T Account and that he had written checks on that account.   The Debtor also testified that he had access to the funds transferred to Defendant through permissive use of Defendant's ATM cards as to both of the Bank Accounts.   Further, the Debtor testified that the Lawsuit Proceeds have been his only income since 2008.

Although the Defendant denies having received any transfers from the Debtor, both the Debtor and Defendant have acknowledged that the Lawsuit Proceeds were deposited to Defendant's Bank Accounts.   Both the Debtor and Defendant have stated that the Debtor spent the Lawsuit Proceeds after they were deposited to Defendant's Bank Accounts.   Both the Debtor

and the Defendant consistently have maintained that that the Transfers to Defendant were "merely a conduit" to deposit funds into the "marital account,"[3] and that the Debtor did not lose ownership or interest in the Lawsuit Proceeds so transferred.  The Debtor has stated that the Transfers to Defendant did not reflect payment for any goods or services or for any extensions of credit or money loaned.

## III.    STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when the matters presented to the Court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. BANKR. P. 7056 (making FED. R. CIV. P. 56(c) applicable in bankruptcy cases); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In considering a motion for summary judgment, the court must construe the "facts and inferences drawn therefrom in the light most favorable to the nonmoving party."  *Seabulk Offshore, Ltd. V. American Home Assur. Co*., 377 F.3d 408, 418 (4th Cir. 2004) (citing *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001)).

With respect to motions for summary judgment, the United States Supreme Court has instructed that factual disputes are "material" only to the extent that they may affect the outcome of the litigation, and they are "genuine" only if the evidence is sufficient for a reasonable jury to find for the nonmoving party.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). The moving party bears the burden of showing that there is no genuine issue of material fact. *Celotex*, 477 U.S. at 323.  When the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Bassett Seamless Guttering, Inc. v. GutterGuard, LLC*, 501 F.Supp.2d 738, 741 (M.D.N.C. 2007)

---

[3]    Use of the term "marital" to describe Defendant's BB&T Account appears to be based on the fact that the Debtor was an "authorized user" of the account.  The BB&T account was titled in Defendant's name.

6

(quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)).

Instead, the nonmoving party must come forward with "specific facts showing there is a *genuine*

*issue for trial*." *Id.*  (emphasis in original).

## IV.    DISCUSSION

Plaintiff's motion for summary judgment is amply supported by Defendant's bank

statements, documentation of Defendant's receipt of the Lawsuit Proceeds provided by the

Debtor's pre-petition litigation attorneys, Defendant's representations and admissions, and the

Debtor's admissions, including those made in the Amended Bankruptcy Papers.  Defendant

objected to the Motion on the grounds that the Trustee has used the term "transfers" to describe

the transactions that took place between Defendant and the Debtor with respect to the Lawsuit

Proceeds.  Defendant also argued that she was not an "initial transferee" of the Lawsuit Proceeds

but rather a "mere conduit."  Defendant's arguments are not well taken.  Nor does Defendant's

assertion that no "transfers" were made to her create a material issue of fact that would preclude

entry of summary judgment.

### A.    Deposits to Bank Accounts are "Transfers."

The Bankruptcy Code's definition of the term "transfer" includes "each mode, direct or

indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with (i)

property; or (ii) an interest in property."  § 101(54)(D).  In crafting this definition "Congress

intended that the deposit of funds in a bank account would constitute a transfer."  *In re Craig*,

252 B.R. 822, 827 (Bankr. S.D. Fla. 2000) (citing *Ameritrust Nat'l Bank v. Davidson (In re*

*Davidson)*, 164 B.R. 782, 785 (Bankr. S.D. Fla. 1994), *aff'd in relevant part*, 178 B.R. 544 (S.D.

Fla. 1995)).  This intent is explicitly set out in the legislative history:

> Paragraph (40) [now (54)] defines "transfer."   .  .  .  A transfer is a
> disposition of an interest in property.  **The definition is as broad as**

> **possible** . . . .   Under this definition any transfer of an interest in property is a transfer, including a transfer of possession, custody or control even if there is no transfer of title, because possession, custody, and control are interests in property.  **A deposit in a bank account or similar account is a transfer.**

*In re Pulliam*, 279 B.R. 916, 920 (Bankr. M.D. Ga. 2002) (quoting S.Rep. No. 95-989, 95th Cong. 2d Sess. 27 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5813) (emphasis added).  *See also Village of San Jose v. McWilliams*, 284 F.3d 785, 793 (7th Cir. 2002) (citing the legislative history for the definition of transfer); *In re Levine*, 134 F.3d 146, 1049 (11th Cir. 1998) (same); *Bernard v. Sheaffer (In re Bernard)*, 96 F.3d 1279, 1282 (9th Cir. 1996) (same). Accordingly, a transfer occurs when the debtor's funds are deposited to the bank account of a third party.

Defendant argues that the checks for Lawsuit Proceeds made payable to her and the deposits to her Bank Accounts did not constitute "transfers."  Yet Defendant admits that the Debtor deposited "***all***" of his income, regardless of source, into Defendant's Bank Accounts. This admission is consistent with the Debtor's testimony and written statements.  Given the case law applying the term "transfer" and the stated congressional intent that deposits to bank accounts fall within that definition, there can be no question that a § 101(54)(D) transfer occurred each time Lawsuit Proceeds were deposited to one of Defendant's Bank Accounts.

**B.**   **Entry of Summary Judgment as to Actual Fraud is Supported by Analysis of the Badges of Fraud.**

Generally speaking, summary judgment is not appropriate with respect to a claim alleging that fraudulent transfers were made with actual intent because the debtor's subjective intent is at issue.  *In re Lamanna*, 2011 WL 5964522 at *4 (Bankr. E.D.N.C. Oct. 25, 2011) (citing *Allman v. Wappler (In re Cansorb Indus. Corp.)*, 2009 WL 4062220 at *9 (Bankr. M.D.N.C. Nov. 20, 2009)).  In certain circumstances, however, summary judgment may be

granted based on an analysis of the "badges of fraud" as applied to the undisputed facts in the case.  *See Triangle Bank v. Eatmon*, 143 N.C. App. 521, 525–526, 547 S.E. 2d 92, 95–96 (N.C. App. 2001) (determining that summary judgment was appropriate with respect to a claim brought under N.C. GEN. STAT. 39-23.4).

    **1.    Analysis of the badges of fraud supports entry of summary judgment as to Plaintiff's claim pursuant to 11 U.S.C. § 544(b) and N.C. GEN. STAT. § 39-23.4(a)(1).**

Section 544(b) of the Bankruptcy Code permits a trustee to avoid any transfer of an interest of the debtor in property that is voidable under applicable law by a creditor holding an unsecured claim allowable pursuant to § 502 of the Bankruptcy Code.  11 U.S.C. § 544(b).  In this case, Federated held an allowable unsecured claim when each of the Transfers was made. North Carolina statutes permit creditors such as Federated to avoid transfers of property of a debtor.

According to N.C. Gen. Stat. § 39-23.4(a), "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) [w]ith intent to hinder, delay, or defraud any creditor of the debtor . . . ."  Section 39-23.4(b) provides a nonexclusive list of the badges of fraud that are appropriate for consideration in determining a debtor's fraudulent intent:

    (1) The transfer or obligation was to an insider;
    (2) The debtor retained possession or control of the property transferred after the transfer;
    (3) The transfer or obligation was disclosed or concealed;
    (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
    (5) The transfer was of substantially all the debtor's assets;
    (6) The debtor absconded;
    (7) The debtor removed or concealed assets;
    (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the

obligation incurred;

(9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) The transfer occurred shortly before or shortly after a substantial debt was incurred;

(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor;

(12) The debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor reasonably should have believed that the debtor would incur debts beyond the debtor's ability to pay as they became due; and

(13) The debtor transferred the assets in the course of legitimate estate or tax planning.

N.C. GEN. STAT. § 39-23.4(b).  Courts are advised to evaluate the "entirety of the circumstances surrounding the transaction at issue" and to take into account factors that militate against a finding of fraudulent intent as well as considering those that suggest fraud.  *In re Schofield-Johnson, LLC*, 462 B.R. 539, 543 (Bankr. M.D.N.C. 2011) (citation omitted); *see also*, *OMOA Wireless, S. Der. L. v. U.S.*, 2010 WL 3199959, at *6–7 (M.D.N.C. 2010) (finding fraudulent intent based on an analysis of the badges of fraud).

In this case, the Transfers to Defendant reflected transfers to the Debtor's wife, who is an "insider" pursuant to 11 U.S.C. § 101(31)(A)(i), thereby implicating the first badge of fraud. The Debtor has stated that he did not "lose ownership or interest in" the Lawsuit Proceeds that were transferred because he was an authorized user of the BB&T Account.  Defendant also testified that he had permissive use of Defendant's ATM card for the Wells Fargo Account. Moreover, Defendant has stated that the Debtor spent the Lawsuit Proceeds by writing checks and making ATM withdrawals from the Bank Accounts.   In this way, the Debtor retained control of the Lawsuit Proceeds after they were deposited to Defendant's Bank Accounts, demonstrating the second badge of fraud.  Because the Transfers were made to accounts that the Debtor did not own and were not disclosed on the Debtor's Amended Bankruptcy Papers, the

Transfers were effectively concealed; thus the third badge of fraud is met.  With respect to the fourth badge of fraud, the Debtor had been sued by Federated before the Transfers were made. As for the fifth badge of fraud, the Transfers reflected substantially all the Debtor's cash assets in that the Debtor did not have any income other than the Lawsuit Proceeds for 2011 and 2010.

By virtue of having been transferred to Defendant's Bank Accounts in which the Debtor held no ownership interest, the Lawsuit Proceeds were concealed and removed from the reach of the Debtor's creditors, a showing as to the seventh badge of fraud.  With respect to the eighth badge of fraud, the Debtor has stated that he did not pay Defendant for any goods and services or for any extensions of credit or money loaned. The Transfers were made after entry of the Federated Judgment, reflecting the tenth badge of fraud.  The Debtor has stated unequivocally that he did not receive value for the Transfers, yet the Debtor owed both Federated and LeLiever, demonstrating the twelfth badge of fraud.

In sum, the Court's review of the admissions by the Debtor and Defendant, combined with the documentary evidence produced by the Defendant, the Debtor, LeLiever and Norman, demonstrates the presence of the majority of the badges of fraud supporting the Trustee's claim for avoidance of the Transfers as actually fraudulent under state law.  *Schofield-Johnson,* 462 B.R. at 542–45 (finding fraudulent intent pursuant to N.C. GEN. STAT. § 39-23.4 upon analysis of the badges of fraud listed therein); *Triangle Bank*, 143 N.C. App. at 525, 547 S.E. 2d at 95 (explaining that "[f]raudulent intent may be established by circumstances, and a close family relationship coupled with less than reasonable consideration and outstanding debts that the debtor is unable to pay is strong evidence of fraud.").  Taken together, the factors enumerated in § 39-23.4(b), as applied in this adversary proceeding, sufficiently indicate an intention by the Debtor to hinder, delay, or defraud Federated from collecting on its judgment.  For these reasons,

entry of summary judgment in favor of Plaintiff is appropriate as to the claim that the Transfers

were actually fraudulent, as asserted in the Plaintiff's Fourth Cause of Action based on § 544(b)

of the Bankruptcy Code and N.C. GEN. STAT. § 39-23.4(a)(1).

### 2. Analysis of the badges of fraud supports entry of summary judgment as to Plaintiff's claim pursuant to 11 U.S.C. § 548(a)(1)(A).

The Trustee argued that the Transfers were actually fraudulent as to present or future

creditors of the Debtor pursuant to 11 U.S.C. § 548(a)(1)(A), which states as follows:

> (1) The trustee may avoid any transfer (including any transfer to or for the
> benefit of an insider under an employment contract) of an interest of the
> debtor in property, or any obligation (including any obligation to or for the
> benefit of an insider under an employment contract) incurred by the
> debtor, that was made or incurred on or within 2 years before the date of
> the filing of the petition, if the debtor voluntarily or involuntarily—
>> (A) made such transfer or incurred such obligation with actual
>> intent to hinder, delay, or defraud any entity to which the debtor
>> was or became, on or after the date that such transfer was made or
>> such obligation was incurred, indebted.

§ 548(a)(1)(A).   The presence of certain badges of fraud applicable to § 548 may provide the

basis for a finding of fraudulent intent under this statute.   *Whitaker v. Mortgage Miracles, Inc.*

*(In re Summit Place, LLC),* 298 B.R. 62, 70 (Bankr. W.D.N.C. 2002).   The badges of fraud

considered in a § 548(a)(1)(A) analysis are similar but not identical to those cited in N.C. GEN.

STAT. § 39-23.4(b) in that they include:

> (1) the lack or inadequacy of consideration;
> (2) the family, friendship or close associate relationship between the
> parties;
> (3) the retention of possession, benefit or use of the property in question;
> (4) the financial condition of the party sought to be charged both before
> and after the transaction in question;
> (5) the existence or cumulative effect of the pattern or series of
> transactions or course of conduct after the incurring of debt, onset of
> financial difficulties, or pendency or threat of suits by creditors; and
> (6) the general chronology of events and transactions under inquiry.

*In re Soza,* 542 F.3d 1060, 1067 (5th Cir. 2008) (citing *Chastant v. Chastant (In re Chastant),*

873 F.2d 89, 91 (5th Cir. 1989)).  As explained by the Fourth Circuit, "[w]hile each fact does not

have to demonstrate actual fraud, the facts taken together must lead to the conclusion that actual

fraud existed."  *Harman v. First Am. Bank of Md. (In re Jeffrey Bigelow Design Group, Inc.),*

956 F.2d 479, 483–84 (4th Cir. 1992) (citing 4 *Collier on Bankruptcy,* ¶ 548.02[5] (15th ed.

1989)).  Transfers between related parties are scrutinized with particular care, and if such

transfers were made without adequate consideration, a presumption of fraudulent intent arises.

*Southern Solutions Produce, LLC v. Miller*, 2009 WL 112441 at *4 (M.D.N.C. Jan. 16, 2009)

(quoting *Tavenner v. Smoot*, 257 F.3d 401, 408 (4th Cir. 2001)).

Here, the first and second § 548 badges of fraud are implicated because, not only were

the Transfers made to the Debtor's spouse, Defendant, but the Debtor has also affirmatively

stated that the Transfers were not made for any goods or services or for extensions of credit or

money loaned. Moreover, the Debtor and Defendant have acknowledged that the Debtor retained

possession and use of the Lawsuit Proceeds after the Transfers were made—indeed, Defendant

has stated that it was the Debtor who spent the Lawsuit Proceeds by writing checks and making

withdrawals.  Accordingly, the third § 548 badge of fraud is at play.  The Transfers took place

during the period after the date of the Federated Judgment, and that judgment remained

unsatisfied, reflecting the fifth § 548 badge of fraud.  Finally, the general chronology of the

Federated Judgment, the awards of the Lawsuit Proceeds, and the subsequent Transfers reflects

the sixth badge of fraud applicable in a § 548(a) inquiry.  For these reasons, there is no genuine

dispute that the Transfers are avoidable as actually fraudulent pursuant to § 548(a)(1)(A).

*Tavenner*, 257 F.3d at 409.

Defendant's argument that the Debtor retained access to and spent the Lawsuit Proceeds

goes to support a finding that the transfers of the Lawsuit Proceeds were fraudulent, rather than

refute it.  If either or both of the Bank Accounts had been owned jointly by Defendant and the

Debtor, then the Debtor's creditors would have been able to reach the funds on deposit.  N.C.

GEN. STAT. § 41-2.1(c).  But both of the Bank Accounts, including the BB&T Account that

Defendant references as a "marital" account, were titled only in Defendant's name.  As the title

owner of the Bank Accounts, Defendant had the legal right to dispose of the funds in those

accounts in any way that she saw fit.  And as Defendant's sole property, both of the Bank

Accounts were beyond the reach of the Debtor's creditors.  The admission that the Debtor

retained an interest in the funds transferred to Defendant simply underscores that the basic

hallmarks of a fraudulent transfer scheme are displayed in this adversary proceeding.

Finally, Defendant argues that the Debtor did not have the "actual intent" to hinder, delay

or defraud Federated because he had tried to set up a payment plan as to the Federated Judgment.

The question of whether or not Federated was willing to agree to a payment plan is irrelevant to

the legal question in this case:  whether the post-Federated Judgment Transfers of the Lawsuit

Proceeds to Defendant, in an arrangement where the Debtor retained access to those funds,

reflected fraudulent conveyances.  Even so, Defendant's argument is belied by the collateral

attack that the Debtor made as to the Federated Judgment by filing a lawsuit in federal court

alleging that Federated's state court collection efforts violated consumer protection laws.[4]

Additionally, the Debtor filed his voluntary bankruptcy petition the day after being ordered to

produce Defendant's bank statements, which would have revealed the facts relative to the

amounts and timing of the Transfers made to Defendant.  Given the Debtor's actions, the self-

serving assertions as to the Debtor's alleged intent reflected in the Objection and the exhibits

thereto cannot be credited.

---

[4]       *See Jenkins v. Federated Financial Corporation of America, Inc., et al.*, Case No. 5:11-CV-496-F
(E.D.N.C.).

**C.     The Trustee is Entitled to Partial Summary Judgment with Respect to the Claims Based on Constructive Fraud.**

*1.     The Transfers were made without reasonably equivalent value and may be avoidable pursuant to N.C. GEN. STAT. §§ 39-23.4(a)(2) & 39-23.5(a) and 11 U.S.C. § 544(b).*

The Trustee's Third Cause of Action reflects a claim for avoidance of the transfers of the Lawsuit Proceeds as fraudulent to present creditors pursuant to 11 U.S.C. § 544(b) and N.C. Gen. Stat. § 39-23.5(a).  Pursuant to § 39-23.5,

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

§ 39-23.5(a).  Similarly, the Trustee's Fourth Cause of Action reflects a claim for avoidance of the transfers of the Lawsuit Proceeds as fraudulent to present or future creditors pursuant to 11 U.S.C. § 544(b) and N.C. Gen. Stat. § 39-23.4(a)(2).  Pursuant to § 39-23.4(a),

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> ***
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> > (a) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> > (b) Intended to incur, or believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

§ 39-23.4(a)(2).  Pursuant to N.C. GEN. STAT. § 39-23.9(2), transfers may be avoided under §§ 39-23.4(a)(2) and 39-23.5(a) within four years after the date of the transfer.

The Trustee maintains that the Debtor's testimony and the documentary evidence

establish a claim that the Transfers were constructively fraudulent pursuant to N.C. GEN. STAT.

§§ 39-23.4(a)(2) and 39-23.5(a).  Based on the Debtor's affirmative statements that the Transfers

to Defendant were not made in payment for any goods or services or in satisfaction of any debt

owed to Defendant, it is clear that the Transfers were not made for "reasonably equivalent

value." §§ 39-23.4(a)(2) & 39-23.5(a).  Federated was a creditor throughout the two-year period

before the Petition Date when the Transfers were made.  Thus, the only open question with

respect to the Trustee's claim that the Transfers were constructively fraudulent under state law is

the issue of whether the Debtor was insolvent when the Transfers were made.

     ***2.***      ***The Transfers may be avoidable pursuant to 11 U.S.C. § 548(a)(1)(B) because the Debtor received less than a reasonably equivalent value in exchange.***

The Trustee's Fifth Cause of Action reflects a claim for avoidance of the transfers of the

Lawsuit Proceeds as fraudulent to present or future creditors pursuant to 11 U.S.C. § 548(a),

which states that:

> (1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>      ***
>      (B)      (i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and (ii)
>      (I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>      (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>      (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>      (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business.

§ 548(a)(1)(B).  Again, transfers to insiders may be avoided under § 548(a) if made within two years of the Petition Date.  As with the Trustee's claims relative to constructive fraud under state law, the Debtor's admission that the Transfers were made without his receiving any goods or services and in the absence of any loan or extension of credit by Defendant satisfies the § 548(a)(1)(B)(i) requirement for avoidability because the Debtor "received less than a reasonably equivalent value" in exchange for them.  Therefore, the only open question with respect to the Trustee's claim that the Transfers were constructively fraudulent under § 548(a)(1)(B) is the issue of whether the Debtor was insolvent when the Transfers were made.

### D. Defendant was an Initial Transferee of the Transfers.

Defendant argues that she was not an "initial transferee" as to the Lawsuit Proceeds, and therefore cannot be held liable on Plaintiff's claims.  Pursuant to 11 U.S.C. § 550(a)(1), the "initial transferee" of property of the debtor may be held liable for the return of that property or its value in an action brought by the trustee.  Defendant cites to *Bowers v. Atlanta Motor Speedway, Inc. (In re Southeast Hotel Properties) (Bowers)*, 99 F.3d 151 (4th Cir. 1996) in arguing that Defendant was a mere conduit for the Debtor's Lawsuit Proceeds and, therefore, she is entitled to the same equitable exception from application of the plain meaning of § 550(a)(1) that was allowed in *Bowers*.  In *Bowers*, the Fourth Circuit noted that the trustee's power to recover from an initial transferee is "absolute."  99 F.3d at 156.  Nevertheless, the Fourth Circuit carved out an equitable exception to § 550(a)(1) because the initial transferees in *Bowers* "were acting in their representative capacity as manager" of the debtor, thus did not have the authority to exercise "legal dominion and control over the funds," and were therefore, "mere conduits" of the transferred funds.  *Id*.

In commercial cases where there is "no hint that the defendants' handling of the debtor's

funds in any way departed from their normal handling of commercial transactions," courts are inclined find an equitable exception to the terms of § 550(a)(1) for an initial transferee that served as a "mere conduit" of the funds. *In re Harbour*, 845 F.2d 1254, 1257 (4th Cir. 1988). If, however, the transferred funds are deposited to an account owned and controlled by the initial transferee, the courts will not apply the "mere conduit" exception to provide relief from the strict rule of § 550(a)(1), regardless of the commercial nature of the transaction. *In re Lambert Oil Co., Inc.*, 347 B.R. 173, 181 (W.D.Va. 2006). In *Lambert Oil*, the court held that the entity to whose operating account the debtor's funds were transferred was the initial transferee because it had dominion and control over that account. *Id.* As was the case in *Lambert Oil*, the Transfers at issue here were made to the Bank Accounts held solely in Defendant's name.

In *Harbour*, the debtor made a number of transfers to a close friend through the friend's mother. 845 F.2d at 1255. The mother acknowledged that she received no consideration for the transfers, and on that basis, the transfers were avoidable by the trustee. *Id.* The mother also did not retain any of the funds routed through her accounts for her own use. *Id.* at 1255. The mother claimed to have been "entirely ignorant of the financial maneuverings of [the debtor] and her son." *Id.* at 1258. In arguing that she should be considered a "mere conduit" rather than the initial transferee, the mother asked the court to ignore the literal meaning of § 550(a)(1). *Id.* at 1257. The *Harbour* court rejected the mother's argument, finding that she was a "willing dupe" who had "aggressively ignored" the facts relative to the transfers made to her. *Id.* at 1258. Accordingly, the court found that the mother had not acted in good faith "as a matter of law" and determined that the mother was an initial transferee rather than a "mere conduit." *Id.*

Other cases show that when the transfer of the debtor's property is made to a transferee that has legal control over the funds, courts hold that the recipient is liable as the initial

transferee. *In re Ezegbunam*, 2010 WL 3517020 at *6 (D.Md. Sept. 3, 2010).  The court in

*Ezegbunam* affirmed the bankruptcy court's holding that the appellant who had received the

proceeds of an unauthorized post-petition sale was the initial transferee of the funds given that

"there [was] nothing indicating that she did not have legal control over the funds or that she was

unable to put those funds to her own use."  *Id.* at *6 (citing *Bowers*).   In the *Ryan* case, cited

above, the debtor had made multiple transfers to his parents' bank accounts.  472 B.R. at 720–21.

Accordingly, the debtor's parents were held to be initial transferees based on their having not

only received the transfers but also having maintained the accounts to which the transfers were

made.  472 B.R. at 729.  And in *Lambert Oil*, the transfers were made directly to the operating

account that was owned and controlled by the recipient entity, resulting in that entity's liability

as the initial transferee.  347 B.R. at 181.

In this case, the Transfers were made directly to Defendant through deposits to her Bank

Accounts of checks for the Debtor's Lawsuit Proceeds.   As the owner of both accounts,

Defendant had legal control over the funds and the right to put them to her own use.  Defendant

continued to maintain the Bank Accounts as the Lawsuit Proceeds were deposited to those

accounts after entry of the Federated Judgment against the Debtor.  The Debtor's admission that

he retained access to and spent those funds does not absolve Defendant of liability as an initial

transferee but rather provides evidence of the fraudulent nature of the Transfers.  *See* N.C. GEN.

STAT. 39-23.4(b)(2).  Therefore, although Defendant argues that she was a "mere conduit" of the

Lawsuit Proceeds, the facts in this case do not support a finding that an equitable exception to §

550(a)(1) should be made.

**E.** **The Trustee is Entitled to Recover the Amount of the Lawsuit Proceeds as Stated in the September Amendment.**

Reflecting a misreading of N.C. Gen. Stat. § 39-23.8 as well as a misunderstanding as to Plaintiff's ability to recover damages for the bankruptcy estate, Defendant argued in the Objection that the Trustee's recovery would be limited to the amount necessary to satisfy the Federated Judgment rather than the total of the Lawsuit Proceeds. Section 39-23.8 limits recovery to "the value of the asset transferred . . . or the amount necessary to satisfy the creditor's lien, whichever is less," Plaintiff brought this adversary proceeding on behalf of the entire bankruptcy estate. § 39-23.8(b). Plaintiff is entitled to recover for the full amount of the Transfers in order to satisfy the claims in and expenses of the Debtor's case.

The Debtor's September Amendment to the Bankruptcy Papers states that he collected $226,031.33 in Lawsuit Proceeds in the two years before the Petition Date. Given that the September Amendment was filed under penalty of perjury, the Court will accept that figure as correct. The Debtor has admitted that "all" of his Lawsuit Proceeds were deposited to Defendant's Bank Accounts. Accordingly, the Trustee is entitled to recover the amount of Lawsuit Proceeds set out in the Amended Bankruptcy Papers, $226,033.31.

## V.    CONCLUSION

In sum, Defendant has not raised a material question of fact that would preclude entry of summary judgment in favor of Plaintiff. The Motion was supported by counsel's affidavit, and documentation obtained from the Debtor, the Defendant, and the Debtor's pre-petition litigation attorneys. Further support for the Motion may be found in the representations made in the Objection and the declarations by Defendant and the Debtor attached thereto. The combined effect of the documentation on the record leads the Court to conclude that the Transfers are avoidable as actually fraudulent. The Court also concludes that the Debtor did not receive

reasonably equivalent value for the Transfers.   Based on Defendant's status as the initial

transferee of the Transfers, Plaintiff is entitled to judgment as a matter of law against Defendant

in the amount of the Lawsuit Proceeds transferred to her, $226,031.33.

IT IS, THEREFORE, ORDERED that:

1)   The Motion is GRANTED and the Objection is OVERRULED with respect to Plaintiff's claim based on actual fraud pursuant to 11 U.S.C. § 544(b) and N.C. Gen. Stat. § 39-23.4(a)(1) as set forth in Plaintiff's Fourth Cause of Action;

2)   The Motion is GRANTED and the Objection is OVERRULED with respect to Plaintiff's claim based on actual fraud pursuant to 11 U.S.C. § 548(a)(1)(A) as set forth in Plaintiff's Fifth Cause of Action;

3)   Defendant is liable to Plaintiff as an initial transferee of the Transfers pursuant to 11 U.S.C. § 550(a)(1) with respect to Plaintiff's claims based on actual fraud as set fort in Plaintiff's Fourth and Fifth Causes of Action;

4)   Plaintiff is entitled to judgment in the amount of $226,231.33 with respect to Plaintiff's claims for actual fraud;

5)   The Transfers in the amount of $226,231.33 were not made for reasonably equivalent value and the Motion for partial summary judgment as to constructive fraud pursuant to 11 U.S.C. § 544(b) and N.C. Gen. Stat. §§ 39-23.4(a)(2) and 39-23.5(a) as set forth in Plaintiff's Third Cause of Action is GRANTED and the Objection is OVERRULED;

6)   The Transfers in the amount of $226,231.33 were not made for reasonably equivalent value and the Motion for partial summary judgment as to constructive fraud pursuant to 11 U.S.C. § 548(a)(1)(B) as set forth in Plaintiff's Fourth Cause of Action is GRANTED and the Objection is OVERRULED;

7)   To the extent that the United States District Court for the Western District of North Carolina may determine that the Court lacks authority to enter a final order in this matter, this Order shall be construed as setting out proposed findings of fact and conclusions of law.

**This Order has been signed
electronically.  The judge's
signature and court's seal
appear at the top of the Order.**

**United States Bankruptcy Court**